(201 P.3d 710)
No. 98,571

STATE OF KANSAS, *Appellee,* v. ALFONZAL JONES, *Appellant.*

Opinion filed January 23, 2009.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Cathy A. Eaton*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Stephen N. Six*, attorney general, for appellee.

Before MCANANY, P.J., BUSER and LEBEN, JJ.

BUSER, J.: Alfonzal Jones appeals his convictions and sentences for aggravated kidnapping and rape. First, Jones appeals the district court's denial of his motion to represent himself at the preliminary hearing. Second, Jones claims the district court erroneously admitted prejudicial testimony. Third, Jones contends the jury instructions were improper. Fourth, Jones claims the district court erred in its response to the jury's question during deliberations. Finally, Jones contends his constitutional rights were violated when the district court enhanced his sentences based on a criminal history that was not proven to a jury beyond a reasonable doubt. We affirm.

### Factual and Procedural Background

On December 28, 2005, W.H. was driving her automobile when a van driven by Jones rammed the side of her vehicle causing it to

travel off the roadway. W.H. was the former fiancée of Jones. Jones jumped from the van and ran towards W.H.'s automobile holding a handgun. Seeing Jones, W.H. accelerated, violated a stop sign, and collided with a truck driven by James Flowers.

After Flowers stepped out of his truck, he observed Jones point a handgun at W.H.'s head, grab her hair, and yell at her to get out of the automobile. Jones threatened to kill W.H. while asking, "Why did [you] do this to me[?]" W.H. thought Jones was asking her why she had left him and recently had filed a Protection From Abuse Act (PFA) petition regarding him. A hearing on the petition had been scheduled for later that day.

After Jones forcibly removed W.H. from her vehicle, he noticed Flowers nearby. Flowers testified that Jones pointed the handgun at him. Flowers retreated as Jones dragged W.H. away by her hair and neck. W.H. was screaming during this encounter.

Jones took W.H. to a friend's apartment in a nearby building. At trial, W.H. testified that Jones yelled at her, asked her why she broke his heart, and threatened to kill her. Then, he told her to undress. W.H. testified that she engaged in sexual relations to avoid getting hurt and in the hope she could later escape. W.H. eventually left the apartment after Jones' friend, who was to prevent her from leaving, fell asleep.

A jury convicted Jones of aggravated kidnapping and rape. He was acquitted of the aggravated assault of Flowers. Jones timely appealed.

### Right of Self-Representation at the Preliminary Hearing

Jones seeks reversal of his convictions because he contends the district court improperly denied his motion for self-representation and insisted that counsel represent him at the preliminary hearing. In order to review this contention, it is necessary to summarize the pretrial proceedings.

At the hearing on the motions, court-appointed defense counsel noted that Jones had been found competent to stand trial, a result she characterized as "amazing." Defense counsel commented that she was "very concerned about [Jones'] understanding of procedurally how things work at a preliminary hearing, very concerned

about what he may, you know, attempt to present or how he may attempt to cross-examine. I don't know if that would be in his best interests to represent himself."

The district court commented on "the loud discussion just a little while ago through the walls" and indicated knowledge of "the previous problems in front of Judge Burns." The district court cautioned Jones to act respectfully in the courtroom and asked Jones about his formal education and legal training. Jones replied that he had a GED and he had studied law books for the past 10 years.

The district judge denied the motion for self-representation by stating, "Okay. Well, I have never and I don't intend to start now allowing people who do not have any specialized legal training that have just done some reading, I'm not going to let them represent themselves. You can assist." Jones objected to the ruling, but the preliminary hearing was conducted with court-appointed counsel representing Jones.

Less than 2 months later, on October 6, 2006, another district judge conducted a pretrial motions hearing. Jones was asked whether he still wanted to represent himself. Jones replied, "I want to be able to participate in my defense." The district court informed Jones that he could either accept his attorney's representation, placing her in charge of how the defense was conducted, or Jones could represent himself and his counsel would be on "standby." The district court advised Jones that if he represented himself he would be held to the same standard as a practicing attorney. Jones replied, "I want to represent myself."

The district court, after referencing federal and state case law, then engaged in an extended and detailed colloquy with Jones to determine if his waiver of counsel was knowing and intelligent. First, the district court explained that Jones' attorney was experienced in handling criminal trials. Next, he gave extensive warnings about the dangers of self-representation. In particular, the district court advised Jones that he would be required to follow the rules of criminal procedure, especially with regard to direct and cross-examination of witnesses, and that the court would not provide him with legal advice. Jones was also told that by representing himself

he would give up the right to later claim ineffective assistance of counsel.

The district court and Jones' counsel provided Jones with a copy of the Kansas Sentencing Guidelines relevant to the charges. An extensive discussion ensued regarding the possible sentences which could be imposed, given Jones' criminal history, if he was convicted of the charges. The district court also asked about Jones' knowledge of possible affirmative defenses or mitigating evidence.

Towards the end of the colloquy Jones advised the district court, "Well, your Honor, I'll go ahead and let her [defense counsel] represent me." The district court confirmed that Jones was not going to change his mind later. Jones told the district court, "Yeah, that motion is withdrawn." Jones was represented by counsel at trial and posttrial proceedings.

On appeal, Jones contends the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by summarily denying his motion to represent himself at the preliminary hearing. Jones complains that at the preliminary hearing, the district court did not obtain a knowing and intelligent waiver of his right to counsel as set forth in *State v. Lowe*, 18 Kan. App. 2d 72, Syl. ¶ 1, 847 P.2d 1334 (1993). The State admits "the court may not have made the appropriate inquiry at the preliminary hearing."

"The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right to self-representation." *State v. Vann*, 280 Kan. 782, Syl. ¶ 2, 127 P.3d 307 (2006). "A criminal defendant who before trial clearly and unequivocally expresses a wish to proceed pro se has the right to self-representation after a knowing and intelligent waiver of the right to counsel. A knowing and intelligent waiver requires that the defendant be informed on the record of the dangers and disadvantages of self-representation." 280 Kan. 782, Syl. ¶ 3.

Jones clearly expressed a desire to waive counsel and represent himself at the preliminary hearing. We agree with the parties that the district court erred by failing to inform Jones of the dangers and disadvantages of self-representation in order to insure that

Jones made a knowing and intelligent waiver of his right to counsel at the preliminary hearing. Moreover, the district court violated Jones' right to self-representation at the preliminary hearing by requiring him to be represented by counsel in violation of the Sixth and Fourteenth Amendments. See *Faretta v. California*, 422 U.S. 806, 818-20, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975); *Vann*, 280 Kan. 782, Syl. ¶¶ 2-3.

The principal issue before us, then, is the remedy. Jones asks us to reverse his convictions, arguing that the denial of his right to self-representation at the preliminary hearing was "structural, and not subject to a 'harmless error' analysis." Jones concedes that after the preliminary hearing, he later "acquiesced to representation by counsel *at trial*." (Emphasis added.) Nevertheless, Jones argues that his "subsequent decision to allow counsel to represent him at trial did not cure the error."

It should be noted that Jones does not contend the denial of his right to self-representation at the preliminary hearing had any effect on his trial. He simply points to the error at the preliminary hearing and asks for reversal of his convictions. In response, the State maintains that Jones' subsequent knowing and intelligent waiver of the right to self-representation prior to trial renders harmless the denial of the right to self-representation at the preliminary hearing.

In reviewing this issue we must ask whether this is one of the " 'very limited class of cases' " subject to "automatic reversal" due to a "['structural'] defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Neder v. United States*, 527 U.S. 1, 8, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999) (quoting *Johnson v. United States*, 520 U.S. 461, 468, 137 L. Ed. 2d 799, 117 S. Ct. 792 [1997]; *Arizona v. Fulminante*, 499 U.S. 279, 310, 113 L. Ed. 2d 302, 111 S. Ct. 1246 [1991]). "The determination of whether an error is structural or harmless involves a question of law subject to unlimited review." *City of Wichita v. Bannon*, 37 Kan. App. 2d 522, Syl. ¶ 6, 154 P.3d 1170 (2007).

In *Lowe*, 18 Kan. App. 2d 72, our court considered a violation of a defendant's right to self-representation at trial. *Lowe* relied

upon *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 79 L. Ed. 2d 122, 104 S. Ct. 944 (1984), wherein the United States Supreme Court explained the inapplicability of harmless error analysis in such situations: "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." See *Lowe*, 18 Kan. App. 2d at 74. Notably, the United States Supreme Court continues to characterize the structural error in *McKaskle* as a violation of the right to self-representation at trial. See *Washington v. Recuenco*, 548 U.S. 212, 218 n.2, 165 L. Ed. 2d 466, 126 S. Ct. 2546 (2006); *Neder*, 527 U.S. at 8; *Johnson*, 520 U.S. at 469.

We think *McKaskle*'s reference to self-representation *at trial* is essential to its structural error analysis. According to *McKaskle*, the "core" of the right to self-representation is the defendant's right "to preserve actual control over the case he chooses to present to the jury." 465 U.S. at 178. Given the judgment of the *McKaskle* Court that a conviction is more likely where the right to self-representation is respected, the question whether a defendant suffered prejudice where the right was violated is an "irrelevance." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4, 165 L. Ed. 2d 409, 126 S. Ct. 2557 (2006) (citing *McKaskle*, 465 U.S. at 177 n.8).

In the present case, however, Jones' right to self-representation was violated at the preliminary hearing, not at the trial. Under Kansas law, the issue at the preliminary hearing is not "the defendant's guilt; it is rather an inquiry whether the defendant should be held for trial." *State v. Jones*, 233 Kan. 170, Syl. ¶ 1, 660 P.2d 965 (1983). A defendant may learn the nature of the charges, the State's evidence in support of the charges, and seek dismissal for lack of probable cause. See *State v. Ramsey*, 228 Kan. 127, 131, 612 P.2d 603 (1980). If the charges are dismissed, the State may initiate another prosecution. 228 Kan. at 131. The general rule in Kansas is, therefore, that "any error at the preliminary hearing stage is harmless unless it appears that the error caused prejudice at trial." *State v. Lee*, 266 Kan. 804, Syl. ¶ 1, 977 P.2d 263 (1999).

*McKaskle* may be read in consonance with Kansas law regarding preliminary hearings, at least under the present facts. Importantly, Jones does not allege the deprivation of his right to self-representation at the preliminary hearing affected his trial. Indeed, under the unique facts of this case, shortly before trial (and after Jones was throughly advised of the dangers and disadvantages of self-representation as mandated by *Lowe*) he knowingly and intelligently waived his right to self-representation and allowed counsel to represent him at trial. If the violation of the right to self-representation at the preliminary hearing did not affect Jones' trial, it neither increased nor decreased the likelihood of a trial outcome unfavorable to him, which was the underlying rationale for the *McKaskle* ruling. Stated another way, where the defendant's trial and conviction are not affected by the deprivation of the right to self-representation at the preliminary hearing, the question of prejudice from the violation is no longer irrelevant, and the harmless error rule applies.

The New York Court of Appeals arrived at a similar conclusion in *People v. Wardlaw*, 6 N.Y.3d 556, 816 N.Y.S.2d 399, 849 N.E.2d 258 (2006). The district court in *Wardlaw* allowed a defendant to proceed pro se at a suppression hearing without an adequate waiver of counsel. The New York Court of Appeals noted that "the normal remedy for a violation of the right to counsel at a suppression hearing is a new suppression hearing, with a new trial to follow if, after the new hearing, the evidence is suppressed." 6 N.Y.3d at 559. In *Wardlaw*, however, it was "clear beyond a reasonable doubt that any new trial would have the same result, even if the defendant's statements were excluded from evidence. Thus a new hearing would serve no purpose." 6 N.Y.3d at 559.

The New York Court of Appeals acknowledged that "[w]hen a defendant has wrongly been denied counsel at a particular proceeding, we do not inquire whether the presence of counsel would have changed that proceeding's result. In this sense, the denial of the right to counsel may not be treated as 'harmless.' " 6 N.Y.3d at 559. Nevertheless, "the remedy to which a defendant is entitled ordinarily depends on what impact, if any, the tainted proceeding had on the case as a whole. Where it had none, the conviction will

be affirmed notwithstanding the error—and in that sense, the harmless error rule does apply. [Citation omitted.]" 6 N.Y.3d at 559.

An example of a tainted pretrial proceeding which did affect the "case as a whole" is *Vasquez v. Hillery*, 474 U.S. 254, 263-64, 88 L. Ed. 2d 598, 106 S. Ct. 617 (1986), where the United States Supreme Court considered racial discrimination in grand jury selection. The Supreme Court pointedly observed that a "grand jury does not determine only that probable cause exists to believe that a defendant committed a crime," the grand jury also controls charging. 474 U.S. at 263.

"Thus, even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicated offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come." 474 U.S. at 263.

Such racial discrimination, therefore, "undermines the structural integrity of the criminal tribunal itself." 474 U.S. at 263-64. This does not mean, however, that error in grand jury proceedings is inherently structural. See *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254, 101 L. Ed. 2d 228, 108 S. Ct. 2369 (1988) (A "district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants.").

In the present case, unlike the grand jury proceeding in *Vasquez*, the prosecutor had the sole discretion to determine whether to charge Jones and what charges were appropriate. These decisions were made prior to the preliminary hearing and, as noted earlier, regardless of the preliminary hearing's outcome, the charging decisions would remain within the prosecutor's discretion.

Thus, the question is still whether any particular error "def[ies] harmless-error review." *Neder*, 527 U.S. at 8. Because Jones does not allege the deprivation of his right to self-representation at the preliminary hearing affected his trial, his convictions, or the structural integrity of the criminal proceedings, the present case does not defy harmless error analysis.

An error of constitutional magnitude is usually governed by the federal constitutional error rule, which provides that an error is

only harmless if it can be declared beyond a reasonable doubt to have had little, if any, likelihood of changing the trial's outcome. *State v. Ventris*, 285 Kan. 595, 608, 176 P.3d 920 (2008). Our own independent review of the record convinces us beyond a reasonable doubt that the denial of Jones' right to self-representation at the preliminary hearing was harmless error. We conclude the district court's error had little, if any, likelihood of changing the trial's outcome.

### Evidence of the Filing of a Protection from Abuse Order

Immediately prior to trial, the State advised that W.H. would testify "she had filed a protection from abuse [PFA] order." See K.S.A. 60-3101 *et seq*. Although the prosecutor stated she would not introduce the order in evidence, she argued that W.H. believed Jones' motive in committing the aggravated kidnapping was to prevent W.H. from attending the PFA hearing later that same day. Defense counsel asked for time to respond to the State's argument. The district court took the matter under advisement, but the issue was not raised again before W.H. began her testimony at trial.

On direct examination, W.H. testified that when Jones dragged her from the vehicle with a gun to her head, "[h]e was just yelling at me, telling me why did I do this to him, [that] he was gonna kill me and just shut up and come on." The prosecutor asked W.H. what Jones meant. She responded, "Why did I leave him. I had left him and filed a PFA against him." Defense counsel asked to approach the bench and requested a ruling on the evidentiary issue and "copies of the PFA to verify what she was going to testify about." The following colloquy then occurred:

"THE COURT: Well, I mean it would seem to me that that is relevant, that it is relevant or testimony for what took place and I think she can testify that she filed the protection from abuse order or initiated the proceedings to obtain an order or what not. I think she can do that. I mean that's admissible evidence.

"[Prosecutor]: Okay.

"[Defense counsel]: Well, just because we're making a record here, okay, I'm also going to object because there was no motion filed. And if she gets any further into, you know, relationship of the parties or anything like that, it has to do with other criminal acts, I'm going to object to any of that if that's where this is going.

"[Prosecutor]: I'm not going to get into any of that. I think it's relevant she said she had just broken up with him and filed a PFA against him. I think she can tell the jury what a PFA is and that's it.

"THE COURT: Let's leave it that way. Ms. Eaton [the prosecutor], just be careful how you frame your questions, okay."

W.H. then testified that a PFA was a "protection from abuse order."

Later, the prosecutor approached the bench and sought permission to establish that the PFA hearing was scheduled for the morning the crimes occurred and that W.H. believed Jones kidnapped her in order to prevent her from testifying at the hearing. Defense counsel objected that W.H.'s belief about Jones' motive was speculation. The district court limited W.H.'s testimony to establishing that the hearing on the PFA order was "set for 1:00 o'clock on December 28th."

During cross-examination by defense counsel, W.H. testified that she had consented to sexual relations with Jones because she was "scared that he might have hurt me because he has hurt me in the past and that's why I have a PFA against him." Defense counsel did not object to this reference to the PFA, but instead established that the PFA was dismissed. During redirect examination, W.H. testified without objection that she was frequently scared of Jones, including at the time she filed the PFA. During closing arguments the prosecutor reminded the jury that W.H. testified she filed the PFA order because she was scared of Jones. Defense counsel did not object to this argument, and Jones does not argue prosecutorial misconduct on appeal.

Jones does argue on appeal that the PFA testimony was admitted contrary to K.S.A. 60-455 and *State v. Gunby*, 282 Kan. 39, 56, 144 P.3d 647 (2006). The State responds that it was unnecessary to file a K.S.A. 60-455 motion because it never sought to introduce the actual PFA order and, if there was error, it was harmless.

Jones did not raise this issue below. Defense counsel initially objected to the PFA testimony because the district court had not ruled on the admissibility of the evidence and defense counsel had not reviewed the PFA order. Although defense counsel warned she would object to testimony of "other criminal acts, . . . if that's

where this is going," she never objected to any PFA testimony on that basis. Moreover, the only other objection to the admission of PFA evidence made by defense counsel regarded W.H.'s speculation as to Jones' motive for kidnapping her. The district court, however, implicitly sustained this objection by limiting W.H. to testimony about the time and date of the PFA hearing.

In order to preserve an issue for appeal, a party must make a timely and specific objection. K.S.A. 60-404; *State v. Anthony*, 282 Kan. 201, 206, 145 P.3d 1 (2006). Additionally, a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. Engelhardt*, 280 Kan. 113, 127, 119 P.3d 1148 (2005). At trial, defense counsel in the present case never raised an objection based on a claimed violation of K.S.A. 60-455. Although there are exceptions to the general rule precluding appellate review upon a failure to properly raise an issue at trial, Jones does not argue for the applicability of any of the exceptions. See *State v. Hunt*, 275 Kan. 811, 813, 69 P.3d 571 (2003).

If the issue had been considered below, the trial court should have determined whether the PFA evidence was relevant to prove a material fact, whether that material fact was in dispute, and whether the probative value of the evidence outweighed the potential for undue prejudice. See *State v. Vasquez*, 287 Kan. 40, Syl. ¶ 2, 194 P.3d 563 (2008). Jones candidly concedes the PFA evidence "may have been relevant in that it provided the jury with evidence of a motive." He only argues that "[e]ven if the evidence was relevant to prove motive, . . . its prejudicial effect far outweighed its probative value." Although there is no ruling to review, "[o]n appeal of a K.S.A. 60-455 issue, a district judge's weighing of probative value and prejudicial effect is reviewed for abuse of discretion." 287 Kan. 40, Syl. ¶ 5.

If we were to attempt analysis of the probative value and prejudicial effect for the first time on appeal, we would not find error. As noted earlier, the PFA evidence did not identify any prior crime or civil wrong. The factual basis for the PFA order was never disclosed, and its dismissal undermined any prejudicial impact. Moreover, the jury's acquittal on the aggravated assault charges suggests

the jury was not prejudiced into concluding the PFA evidence showed Jones' propensity to commit crimes of violence. Under the circumstances, the probative value outweighed any prejudicial effect.

Even if we assume the PFA evidence was more prejudicial than probative, reversal is not automatic. See *Gunby*, 282 Kan. at 57. "[T]he admission of evidence regarding prior crimes and civil wrongs in violation of the requirements of K.S.A. 60-455 [is] harmless [where] it was not inconsistent with substantial justice, did not affect the defendant's substantial rights, and had no likelihood of changing the results at trial." *State v. Warledo*, 286 Kan. 927, Syl. ¶ 4, 190 P.3d 937 (2008). For the reasons already mentioned, we are convinced that any error was harmless.

On a related matter, Jones contends the district court's failure to issue a limiting instruction was clear error. Assuming the PFA evidence was admissible under K.S.A. 60-455, the district court should have issued a limiting instruction informing the jury of the specific purpose for its admission. See *Gunby*, 282 Kan. at 48. The State argues Jones did not request a limiting instruction, and the failure to issue one was not clear error.

The State is correct that Jones did not request a limiting instruction or object to its omission. In this situation, "the failure to give the instruction will be reversible only if clearly erroneous. [Citation omitted.]." *Gunby*, 282 Kan. at 58-59; see K.S.A. 22-3414(3). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred.' [Citations omitted.]" 282 Kan. at 59.

There was no real possibility the jury would have rendered a different verdict had a limiting instruction been issued. The testimony in question was brief and ambiguous and not likely to persuade the jury that Jones had a general propensity to commit violent crimes. Moreover, there was eyewitness testimony from both W.H. and Flowers of Jones' audacious violence during this encounter. Given this record, Jones has failed to show clear error.

## Aggravated Kidnapping Instruction

Jones next contends the district court erred in submitting an aggravated kidnapping instruction that was broader than the charge contained in the information. In relevant part, the State charged aggravated kidnapping as follows: "Jones did . . . take or confine a person, to-wit: [W.H.], by force, threat or deception, with the intent to hold such person to facilitate flight or the commission of a crime, to-wit: Rape." In Instruction No. 6, however, the trial court directed the jury to determine whether Jones "took or confined [W.H.] by force or threat . . . with the intent to hold such person to inflict bodily injury or terrorize the victim or to facilitate the commission of any crime."

At the instructions conference, defense counsel objected to the addition of an intent to terrorize. She argued that Jones had filed a pretrial pro se motion for a bill of particulars which was overruled.

The trial judge had denied the motion because the State had an "open file" policy and "we already had a preliminary hearing. I don't know what the motion for bill of particulars could . . . include beyond what the defense already knows." Defense counsel maintained that denial of the motion for a bill of particulars and an instruction on intent to terrorize would allow "the State to have . . . an overbroad opportunity to do kind of an either/or." Counsel stated generically that this "violated [Jones'] rights."

The State responded that the instruction was "appropriate to the evidence that has been heard at trial." The State also argued that Jones' motion for a bill of particulars "did not allege that he had this particular problem." The State finally contended that the evidence at trial conformed to the evidence at the preliminary hearing—a point which Jones' counsel did not dispute.

The district judge overruled Jones' objection to Instruction No. 6:

"Well, the Court is going to find that these instructions are appropriate and the use of the words 'to terrorize' I think certainly conforms to the evidence that took place. The record shows that this young lady's automobile was rammed by another vehicle, that she was afraid, that she tried to get away, that she ran into Mr. Flowers' vehicle. At that point she was pulled from the vehicle that she was in by

her hair and at the point of a gun and dragged off and she was screaming and she at least at some point resisted, and that would certainly give a reasonable inference that she was certainly terrorized at that point and was then taken to a house or apartment in the vicinity. And what took place there took place there, but I think there's more than enough evidence in the record to find that this taking was done with the intent to terrorize the victim as well as to inflict some type of bodily harm, including rape. So that objection is noted and it is denied."

On appeal, Jones does not renew his argument regarding the denial of the bill of particulars. He does not claim the relevant evidence summarized by the district court at trial diverged in any way from the evidence presented at the preliminary hearing. Nor does Jones dispute that Instruction No. 6 conformed to the evidence at trial.

Jones instead argues he was deprived of notice and an opportunity to present a defense:

"The State originally alleged that Mr. Jones kidnapped [W.H.] in order to rape her. Mr. Jones' defense to the charge of aggravated kidnapping was that he never intended to rape [W.H.], and that the two had consensual sexual intercourse after 'making up.' Mr. Jones, however, presented no defense to the theory that he took or confined [W.H.] in order to terrorize her. If defense counsel had known that the district court was going to instruct on the second theory of kidnapping, she may have attempted to mount a defense to that theory."

Jones does not explicitly claim a violation of due process rights, but we believe it is the issue he raises. See *State v. Wade*, 284 Kan. 527, 533, 161 P.3d 704 (2007) ("Wade first contends that the district court's elements instruction broadened the scope of the . . . charges and deprived him of notice and a fair opportunity to prepare his defense, *i.e.*, deprived him of due process."); *In re Care & Treatment of Hay*, 263 Kan. 822, Syl. ¶ 4, 953 P.2d 666 (1998) ("The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case."). We therefore do not apply the standard of review for cases where the defendant objected to instructions below. Because "the gravamen" of Jones' argument "is a constitutional due process challenge, . . . we exercise unlimited review. [Citation omitted.]" *Wade*, 284 Kan. at 534.

"A jury instruction on the elements of a crime which is broader than the information charging the crime is erroneous. Such an error may be excused only where the substantial rights of the defendant have not been prejudiced." *Wade*, 284 Kan. 527, Syl. ¶ 3. "If a defendant's ability to prepare and present a defense has been compromised by an erroneously broadened jury instruction, the substantial rights of the defendant have been prejudiced." 284 Kan. 527, Syl. ¶ 4. Under the federal constitutional error rule, "an error is harmless only if the reviewing court is able to declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the outcome of the trial. [Citation omitted.]" *State v. Ventris*, 285 Kan. 595, 608, 176 P.3d 920 (2008).

Instruction No. 6 was broader than the aggravated kidnapping charge. As a result, the question is whether the error violated Jones' due process rights by compromising his ability to prepare and present a defense. As already indicated, Jones makes two assertions: (1) that he "presented no defense to the theory that he took or confined [W.H.] in order to terrorize her" and (2) that if he had known of the intent to terrorize theory, his counsel "may have attempted to mount a defense to that theory." Jones does not explain or expand upon these conclusory assertions.

Jones did not present any evidence at trial. Contrary to Jones' first assertion, however, defense counsel contended in closing argument that Jones' actions were not committed with the intent to terrorize W.H. Instead, defense counsel characterized Jones' actions as the latest episode in an ongoing and troubled domestic relationship involving Jones and W.H.:

"To terrorize [W.H.], that's the nature of their relationship. She had a PFA, you know. I'm not saying she's not a nice person, I'm not saying my client's a nice person. What I'm saying is sometimes people argue and sometimes people argue in a really bad way. Does that mean that kidnapping has occurred? No."

With regard to Jones' second assertion, that his counsel "may have attempted to mount a defense," Jones provides nothing more than conjecture, leaving us to speculate about what other defense he would have presented.

"An appellate court will not independently search the record and guess which specific facts a party believes support its general al-

legations." *State v. Bryant*, 285 Kan. 970, Syl. ¶ 3, 179 P.3d 1122 (2008). Moreover, "error at the trial court level is never presumed but must be made to affirmatively appear." *State v. Lumley*, 25 Kan. App. 2d 366, 371, 963 P.2d 1238 (1998), *aff'd* 267 Kan. 4, 977 P.2d 914 (1999); see also *State v. Miller*, 222 Kan. 405, 408, 565 P.2d 228 (1977) (citing cases). Jones' argument fails in this respect. We cannot simply presume that Jones' due process rights were violated.

Even if we were inclined to speculate on an available defense, the record suggests none. Jones' actions were brazen and violent. From the record on appeal it appears that the best possible argument against an intent to terrorize was the one made by Jones' counsel.

If there was a better defense, Jones bore the burden to designate a record showing it and then argue the point. See *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008); *State v. Mitchell*, 284 Kan. 374, 377, 162 P.3d 18 (2007). In the absence of such a record and argument, we cannot conclude that Jones' substantial rights were prejudiced. For the reasons stated, we find beyond a reasonable doubt that the instructional error had little, if any, likelihood of changing the outcome of the trial.

### Sympathy Instruction

In Instruction No. 15 the district court informed the jury: "You must consider this case without favoritism or sympathy for or against either party. Neither sympathy nor prejudice should influence you." Neither party objected to the instruction.

When a party fails to object to an instruction at trial, an appellate court reviews the instruction to determine if it was clearly erroneous. " 'Instructions are clearly erroneous if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.' [Citation omitted.]" *Bryant*, 285 Kan. at 983.

Jones contends the circumstances of this case did not justify giving the sympathy instruction. He correctly notes this instruction, previously found at PIK Crim. 2d 51.07, has been deleted from the pattern instructions and is no longer approved for general use.

Nevertheless, the sympathy instruction may be used if the facts present very unusual circumstances. See PIK Crim. 3d 51.07; *State v. Baker,* 281 Kan. 997, 1004, 135 P.3d 1098 (2006). Having reviewed the record evidence in this case, we discern no such circumstances that warranted providing the jury with Instruction No. 15 and the district court erred in giving the instruction.

Jones concedes that "evidence that Mr. Jones kidnapped and raped [W.H.] may have evoked sympathy for W.H.," but he claims prejudice by speculating that the instruction may have caused the jury to discount evidence of W.H.'s prior drug use when weighing her credibility. Jones also alleges Instruction No. 15 may have prevented the jury from being sympathetic towards him because he misunderstood that W.H. did not want to have consensual sexual relations with him and W.H. had previously ended their engagement.

Jones' claims of prejudice are highly speculative and unpersuasive. In addition to Instruction No. 15, Instruction No. 4 stated: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." Considered together, the district court's instructions properly guided the jury's deliberations.

We are firmly convinced that Jones' substantial rights were not prejudiced in any way by the instructional error. See *State v. Turbeville,* 235 Kan. 993, 997-98, 686 P.2d 138 (1984). There is no real possibility the jury would have rendered a different verdict if the instructional error had not occurred. See *Bryant,* 285 Kan. 970, Syl. ¶ 10.

### Response to the Jury's Question

Included in the jury instructions was Instruction No. 17, patterned after PIK Civ. 3d 101.09. The instruction read in part:

"The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance. It is rarely helpful for a juror, upon entering the jury room, to make an emphatic expression of their opinion on the case or to announce a determination to stand for a certain verdict. The result of conduct of this nature might be that a juror because of personal pride would hesitate to recede from an announced position when shown that it is erroneous.

"It is natural that differences of opinion will arise. When they do, each juror should not only express their opinions but the reasons upon which they base them.

"Although a juror should not hesitate to change their vote when their reason and judgment are changed, each juror should vote according to their honest judgment, applying the law from the instructions to the facts as proved. If every juror is fair and reasonable, a jury can almost always agree.

"It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without compromise to your individual judgment.

"Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions.

"Your agreement upon a verdict must be unanimous."

Neither party objected to the instruction.

After the jury retired for deliberations, it submitted the following question:

"If one juror expresses a viewpoint contrary to the rest but then states that [he or she does] not wish to hang the jury and will go along with the rest, is it appropriate for us to accept that as a 'yes' to allow us to proceed?"

Jones' attorney asked the district court to respond to the question by stating "no" and then referring the jury to Instruction No. 17. The district court declined Jones' request to respond "no," but it did agree to direct the jury to read Instruction No. 17.

Jones contends the district court erred by not stating "no, period" prior to its directive to the jury to read Instruction No. 17. Jones claims prejudice because the jury rendered a unanimous verdict.

As a general rule, when a party fails to object to an instruction at trial, an appellate court reviews the instruction to determine if it was clearly erroneous. *Bryant*, 285 Kan. 970, Syl. ¶ 10. In the present case, however, Jones "does not claim that giving the instruction prior to deliberations was error."

An appellate court reviews the district court's decision to respond to a jury's request for additional information during deliberations for abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the district court's action,

it cannot be said that the district court abused its discretion. *State v. Reed,* 282 Kan. 272, 280, 144 P.3d 677 (2006).

K.S.A. 22-3420(3) governs a jury's request for additional information during deliberations. The statute provides:

"After the jury has retired for deliberations, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

Additional instruction will be upheld if it "is not coercive or objectionable." *State v. Murdock,* 286 Kan. 661, 680, 187 P.3d 1267 (2008). The key factor is whether the district court's response " 'was a correct statement of the law as applied to the facts brought out in the evidence.' [Citation omitted]." 286 Kan. at 683.

The use of PIK Civ. 3d 101.09 has been approved for use in criminal jury trials. See *State v. Cummings,* 242 Kan. 84, 90, 744 P.2d 858 (1987); *State v. Hall,* 220 Kan. 712, 718, 556 P.2d 413 (1976). The issue then becomes whether the district court's failure to state "no, period" prior to directing the jury to read Instruction No. 17 was coercive or objectionable.

It is well settled that when a jury raises a question during a trial that has been adequately covered by the original instructions, the district court may answer the question by directing the jury to read the instructions already given. *State v. Thomas,* 6 Kan. App. 2d 925, 932, 636 P.2d 807 (1981). In the present case, the district court did not alter the original instruction, which specifically advised that "each juror should vote according to their honest judgment." The instruction also properly directed the jury to "consult with one another and to deliberate with a view to reaching an agreement if you can do so without compromise to your individual judgment." The district court's refusal to preface its directive to read Instruction No. 17 with "no, period" was not "arbitrary, fanciful, or unreasonable." See *Reed,* 282 Kan. at 280. To the contrary, the response by the district court was a proper statement of law and responsive to the jury's question. Accordingly, the district court did not abuse its discretion.

*Sentencing*

Finally, Jones contends the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution when it imposed Jones' sentences based in part on his criminal history without proving the prior convictions to a jury beyond a reasonable doubt. Jones bases this claim of error on the landmark Supreme Court decision, *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

Jones concedes that our Kansas Supreme Court has previously rejected his contention in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002) (including prior criminal convictions in criminal history score is constitutional); see *State v. Storey*, 286 Kan. 7, 16, 179 P.3d 1137 (2008) (reaffirming *Ivory*); *State v. Gonzalez*, 282 Kan. 73, 116-18, 145 P.3d 18 (2006) (affirming *Ivory* after United States Supreme Court's post-*Apprendi* decisions). Jones has provided no persuasive reason for this court to retreat from controlling precedent. We find no error in Jones' sentences imposed by the district court.

Affirmed.