NOT DESIGNATED FOR PUBLICATION

No. 119,572

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MCCLINTON BASS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed July 19, 2019. Convictions reversed, sentences vacated, and case remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

PER CURIAM: McClinton Bass appeals his convictions and sentences for attempted aggravated indecent liberties with a child and possession of cocaine. On appeal, Bass' principal argument is that the district court violated his right to self-representation under the Sixth Amendment to the United States Constitution. He also contends that the district court erred by denying his presentence motion to withdraw his guilty pleas. Moreover, he contends that the district court erred in calculating his criminal history score. We consider only Bass' argument that the district court violated his Sixth

1

Amendment right to self-representation. We conclude that the district court violated Bass' right to self-representation resulting in structural error. As a result, we reverse Bass' convictions, vacate his sentences, and remand the case to the district court for further proceedings.

On September 13, 2017, the State charged Bass with one count of aggravated indecent liberties with a child, a severity level 3 person felony in violation of K.S.A. 2017 Supp. 21-5506(b)(1), and one count of possession of cocaine, a severity level 5 nonperson felony in violation of K.S.A. 2017 Supp. 21-5706(a). Because Bass was indigent, the district court appointed counsel—Elizabeth Kluzak—to represent Bass.

About two months later, Bass moved pro se to dismiss Kluzak as counsel. Bass concluded in his pro se motion the following:

> "[He was] seeking to retain new counsel, however. 'The constitution does not force a lawyer upon a defendant.' *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942). Therefore, [he] should not have to be forced by th[e] court to be continually represented by [Kluzak,] who ha[d] failed [him] and violated his trust."

The district court held a hearing on Bass' motion. During the hearing, Bass told the district court that "[he] would like either another counsel . . . or [he could] try to do it [himself]." Further, Kluzak provided her reasons why she believed that she could still represent Bass. When addressing Bass' complaints about access to discovery, Kluzak noted that she "did hesitate [turning over discovery] at first because [she] was concerned Mr. Bass might not be able to read and understand it. But [she] did ultimately turn it over to [Bass] to review." At the end of the hearing, the district court denied Bass' motion, ruling that Bass did not have a justifiable dissatisfaction with Kluzak's representation. But, after the district court denied Bass' motion, Bass asked the district court: "I can't

2

represent myself?" To which the district court replied: "If you wish to represent yourself, sir, you'll need to file a separate motion. That's not what this motion asks for."

Following that hearing, Bass filed two more pro se motions. First, he moved to dismiss Kluzak as counsel again. Second, he moved to represent himself and appoint standby counsel.

The district court scheduled a combined hearing on Bass' pro se motions and Bass' preliminary hearing. Of note, a different district court judge presided over this hearing than his previous hearing where the judge told Bass to file a separate written motion on self-representation. At the outset of this hearing, however, Bass and the State announced that they had entered into a plea agreement. Under the plea agreement, Bass would plead guilty to one count of attempted aggravated indecent liberties with a child, as well as one count of possession of cocaine. Both parties agreed to recommend that the district court sentence Bass to the mitigated presumptive sentences for both felony counts based on Bass' criminal history and to also request that Bass' sentences run concurrently.

The district court then started to ask Bass questions about whether it was his desire to enter into the plea agreement with the State:

> "THE COURT: Okay, you are 55 years old and have three years of school; is that right?
> "THE DEFENDANT: Uh-huh.
> . . . .
> "THE COURT: All right, first of all, you had filed some motions. I think we need to deal with those first. There [were] motions that were set actually technically for Friday, but I was intending to deal with them today before we had the preliminary hearing. One motion to replace counsel and then a motion to go ahead and represent yourself and you're familiar with those motions because you prepared them; right?
> "THE DEFENDANT: Right.

3

"THE COURT: Okay, have you had a chance to discuss those issues with Ms. Kluzak?

"THE DEFENDANT: Yes.

"THE COURT: All right, and I'm taking it by the way things have proceeded here today that you're planning to go ahead and have her continue to represent you through the plea and through sentencing; is that right?

"THE DEFENDANT: Correct.

"THE COURT: All right, so you've had a chance to fully discuss those issues with her and is it your choice to go ahead and withdraw your motion to dismiss counsel and your motion to represent yourself?

"THE DEFENDANT: Correct.

"THE COURT: Okay, you understand constitutionally you have the right to represent yourself. I can't stop you. I would try, but I can't anyway. Ultimately, that's your decision. As to who represents you, it is more complicated than that and I think you had a previous hearing on that so you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Understanding all that, you wish to withdraw both those motions?

"THE DEFENDANT: Right.

"THE COURT: Okay, then I'll show both those motions withdrawn."

Next, the district court engaged in the plea colloquy. Ultimately, the district court accepted Bass' guilty pleas.

Before sentencing, Bass moved to withdraw his guilty pleas, arguing that he had been misled. The district court appointed Bass new counsel. The district court held a hearing on Bass' motion. At the hearing, both Bass and Kluzak testified. Both testified openly about Bass' illiteracy. Bass explained that he had other inmates write his pro se motions, which he would then sign. In the end, the district court denied Bass' motion, finding that "[t]here [was] no evidence to support a finding that Mr. Bass was misled, coerced, mistreated or taken advantage of before or at the time of his plea in the case." Then, based on Bass' criminal history score of A, the district court sentenced Bass to a

controlling term of 122 months' imprisonment followed by lifetime postrelease supervision for his crimes of attempted aggravated indecent liberties with a child and possession of cocaine.

Bass timely appealed.

*Did the District Court Violate Bass' Right to Self-Representation?*

Our Supreme Court has observed: "The extent of the right to assistance of counsel and the related right to self-representation is a question of law over which this court exercises unlimited review." *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018).

The Sixth Amendment of the United States Constitution right to have the assistance of counsel in a criminal prosecution, like other constitutional rights, can be waived: "The United States Supreme Court has held 'that the Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right to self-representation.'" *Bunyard*, 307 Kan. at 470 (quoting *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 [2006]). A defendant's right to represent himself or herself exists implicitly within the Sixth Amendment. *State v. Jones*, 290 Kan. 373, 377, 228 P.3d 394 (2010). Further, a defendant's right to self-representation applies in all "critical stages" of the criminal process where the defendant also has a right to counsel. *Jones*, 290 Kan. at 379 (citing *Iowa v. Tovar*, 541 U.S. 77, 80, 124 S. Ct. 1379, 158 L. Ed. 2d 209 [2004]).

As our Supreme Court has explained, defendants have a right to represent themselves when they have made an intelligent and understanding waiver: "A defendant who clearly and unequivocally expresses a wish to proceed pro se has the right to represent himself or herself after a knowing and intelligent waiver of his or her right to counsel." *Jones*, 290 Kan. at 376. To be a knowing and intelligent waiver, the district

5

court must tell the defendant of "the dangers and disadvantages of self-representation, so that the record will establish that 'he [or she] knows what he [or she] is doing and his [or her] choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 [1942]).

In determining if the defendant has made a knowing and intelligent waiver, "[a] trial court may not measure a defendant's competence to waive his or her right to counsel by evaluating the defendant's 'technical legal knowledge.'" *Jones*, 290 Kan. at 377 (quoting *Godinez v. Moran*, 509 U.S. 389, 399-400, 113 S. Ct. 2680, 125 L. Ed. 2d 321 [1993]). Moreover, the district court should not consider if an attorney could better represent the defendant. *Bunyard*, 307 Kan. at 470-71.

"A district judge's denial of a criminal defendant's right to forego counsel and represent himself or herself is structural error requiring reversal of the defendant's convictions." *Bunyard*, 307 Kan. 463, Syl.

On appeal, Bass argues that the district court violated his Sixth Amendment right to self-representation when it declined to consider his request for self-representation. Bass asserts that once he asked the district court to represent himself following the denial of his request for new counsel, the law required the district court to tell him about the dangers and disadvantages of self-representation. Bass maintains that no written motion requirement exists for a defendant to assert the right to self-representation. Moreover, Bass argues that his later decision to withdraw his written pro se motion for self-representation does not render the district court's previous error harmless. In making his arguments, Bass relies primarily on our Supreme Court decisions in *Bunyard* and *Jones*, asserting those cases are comparable to his case.

6

The State argues that the district court did not violate Bass' Sixth Amendment right to self-representation because Bass never made an unequivocal request to represent himself. The State asserts that Bass merely suggested representing himself as an alternative to the dismissal of Kluzak. The State further asserts that Bass' question to the district court—"I can't represent myself?"—does not constitute an unequivocal request for self-representation. Then, the State argues that because Bass withdrew his written pro se motion for self-representation, the entire issue of whether the district court violated Bass' Sixth Amendment right to self-representation is moot.

Nevertheless, we cannot endorse the State's attempt to avoid the constraints placed on us by our Supreme Court precedents in *Bunyard* and *Jones*. Those two decisions establish that the district court violated Bass' Sixth Amendment right to self-representation. First, the district court violated Bass' right to self-representation the moment it did not advise Bass about the perils of proceeding pro se after Bass clearly and unequivocally told the district court he wanted to represent himself. Second, the district court's imposition of a written motion requirement on Bass constituted a further violation of Bass' Sixth Amendment right to self-representation.

*Our Supreme Court Precedents*

In *Bunyard*, the district court held a hearing on a Friday, three days before Bunyard's criminal trial. He told the district court, "'I want it on the record I wish to represent myself unequivocally.'" 307 Kan. at 466. Bunyard made this request because he believed that his counsel was not advancing certain arguments. The district court responded that it would not consider an oral motion. Further, it told Bunyard that if he wanted it to consider his argument for self-representation, he must file a written motion. The district court required Bunyard to file a written motion even though Bunyard told the district court that the jail would not allow him to mail the written motion on the weekend.

7

As a result, Bunyard was unable to file a written motion over the weekend before the start of his trial.

Yet, when Bunyard's trial began on Monday, the district court noted that over the course of his case, Bunyard had filed several pro se motions where he "'purport[ed] to represent [himself].'" 307 Kan. at 468. Bunyard's counsel explained to the district court that after discussing the matter with Bunyard, Bunyard wished to withdraw all of his pro se motions. The district court asked Bunyard if this was correct, and Bunyard agreed it was correct. As a result, the district court considered Bunyard's pro se motions withdrawn, and Bunyard proceeded to trial with counsel. The jury found Bunyard guilty on all counts.

On appeal to our Supreme Court, Bunyard argued that his convictions should be reversed because the district court violated his Sixth Amendment right to self-representation. In agreeing that the district court had violated Bunyard's right to self-representation, our Supreme Court explained what a court should not do when considering a defendant's right to self-representation:

> "Bunyard filed multiple pro se motions during the pendency of his prosecution. Then—admittedly at the eleventh hour and only when prompted by what may have been intended as a rhetorical question by an all-but-fully-exasperated trial judge—Bunyard made more than one clear statement that he wished to proceed pro se. Despite this expressly 'unequivocal' invocation of his right to self-representation, the district judge did not counsel Bunyard with a view toward ascertaining Bunyard's informed wishes. *Rather, the judge put off addressing Bunyard's request, saying that he would not address it at all unless Bunyard filed a written motion. Bunyard had no practical way to file a written motion over the weekend*, and the judge's demand for such a motion appeared to leave Bunyard . . . without recourse on the issue. In this context, Bunyard's silence on Monday when other pro se motions were heard was understandable. He had been left with a firm impression that he would not be permitted to represent himself. His failure to reassert his

right to do so in such circumstances and his allowance of counsel's representation during the trial did not amount to an implicit decision not to pursue self-representation.

"Bunyard's pretrial requests to represent himself were not, as the State argues, 'simply based on his desire to ensure that certain arguments were advanced on his behalf.' *The record certainly demonstrates that he believed he had information and argument not being explained on Friday by his counsel, and that prompted his interruption of the proceedings. But, at that point, the judge presented Bunyard with a choice: Either allow counsel to proceed without interference or represent yourself. Bunyard chose the latter.* And his choice did not change after his consultation with counsel. Instead, he 'unequivocally' repeated his choice on the record. *At that point the law required that he be advised about the perils of proceeding pro se and then permitted to do so if he made a knowing and intelligent waiver of his right to counsel. Instead, the judge told Bunyard that the subject of self-representation would not be addressed on Friday and erected a writing requirement barrier that was virtually guaranteed to thwart Bunyard's express intention.* The judge then ruled on the very motion on which Bunyard had tried to be heard, and he never took up the subject of self-representation again. Using the words of the Court of Appeals panel but reaching the opposite conclusion, we hold that *regardless of whether there was a 'deliberate undermining' of Bunyard's right to represent himself, there was certainly a 'functional' undermining of that right.* See 2016 WL 1719607, at \*4." (Emphases added.) 307 Kan. at 477-78.

In *Jones*, at Jones' preliminary hearing, Jones' attorney told the court that his client wanted to represent himself at the hearing. The district court denied that motion because Jones was not trained in the law. That district court then proceeded with Jones' preliminary hearing. A different district court judge presided over a renewed hearing on Jones' motion to represent himself at the start of Jones' jury trial. After a lengthy discussion about whether Jones still wanted to represent himself, Jones decided to proceed with appointed counsel. The jury convicted Jones on all counts.

On appeal to this court, this court held that the district court judge at the preliminary hearing violated Bass' right to self-representation, but the error was harmless because the events of the preliminary hearing had little likelihood of changing the

9

outcome of Jones' trial. *State v. Jones*, 40 Kan. App. 2d 1146, 1155, 201 P.3d 710 (2009), *rev'd* 290 Kan. 373. Our Supreme Court reversed this court because the harmless error analysis does not apply in cases where a district court violated a defendant's right to self-representation. 290 Kan. at 382.

First, our Supreme Court held that the district court erred when it denied Jones' motion because of Jones' lack of a college education and legal training. Our Supreme Court explained that the only inquiry that mattered was whether Jones made a knowing and intelligent waiver. 290 Kan. at 378. Second, our Supreme Court considered whether Jones had a right to self-representation at his preliminary hearing. The *Jones* court held: "The reasoning by the Supreme Court in *Faretta* supports the conclusion that the right to self-representation extends to all phases of the criminal proceeding." 290 Kan. at 379. This meant that a preliminary hearing necessarily constituted a critical stage of a defendant's criminal proceedings where the defendant had a right to self-representation. *Jones*, 290 Kan. at 379.

The *Jones* court concluded by explaining that harmless error analysis does not apply when a district court denies a defendant's right to self-representation during a critical stage of the defendant's criminal proceeding:

> "'Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless.' *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 79 L. Ed. 2d 122, 104 S. Ct. 944 (1984). If a defendant's right to represent himself or herself is violated, the defendant is entitled to a new trial regardless of whether he or she can demonstrate prejudice. See, *e.g.*, *Flanagan v. United States*, 465 U.S. 259, 268, 79 L. Ed. 2d 288, 104 S. Ct. 1051 (1984) (violating Sixth Amendment right to represent oneself does not require showing of prejudice to defense in order to obtain reversal)." 290 Kan. at 382.

10

Thus, the *Jones* court reversed Jones' convictions because the district court committed structural error. 290 Kan. at 382-83.

*Violation of Bass' Right to Self-Representation*

Turning our focus back to Bass' case, we must first consider the State's argument that Bass did not make an unequivocal request to represent himself. The State argues that Bass could not have made a clear and unequivocal statement to represent himself because he made comments about representing himself as an alternative should the district court deny his motion to dismiss Kluzak and appoint new counsel. In other words, the State argues that a motion on his dissatisfaction with Kluzak's representation could not constitute a clear and unequivocal statement that Bass wanted to represent himself. The State also argues that Bass' question about representing himself at the close of the hearing cannot be considered a clear and unequivocal statement.

Although "'a defendant's request to be relieved of counsel in the form of a general statement of dissatisfaction with his attorney's work does not amount to an invocation of the *Faretta* right to represent oneself,'" *State v. Hollins*, 9 Kan. App. 2d 487, 489, 681 P.2d 687 (1984) (quoting *Moreno v. Estelle*, 717 F.2d 171, 176 [5th Cir. 1983]), Bass made more than a general statement about his dissatisfaction with Kluzak. To begin with, the State ignores that in his pro se motion to dismiss Kluzak as counsel, Bass also asserted that if the district court denied his motion, he would then represent himself. Indeed, this is a fact that the district court also ignored because it told Bass he must file a written motion.

In his pro se motion to dismiss Kluzak as counsel, Bass quoted the United States Supreme Court case of *Adams v. United States ex rel. McCann* for the proposition that "the Constitution does not force a lawyer upon a defendant." 317 U.S. at 279. In *Faretta*—the case where the United States Supreme Court held that a defendant's Sixth

11

Amendment's right to self-representation is made applicable to the states through the Fourteenth Amendment—the Court relied on *Adams* as precedent for the rule that the Constitution does not force lawyers upon defendants. 422 U.S. at 814-15.

Accordingly, despite the State's argument to the contrary, Bass' pro se motion to dismiss Kluzak as counsel included more than a general statement of dissatisfaction with Kluzak's representation. Instead, within his pro se motion, Bass told the district court that his relationship with Kluzak was irrevocably broken, that he wanted appointment of new counsel, but if the district court denied those requests, that he would represent himself. Indeed, Bass repeated his intention to represent himself at the hearing on his motion. Again, Bass spoke twice on this issue at the hearing: First, when explaining his motion, Bass told the district court, "[he] would like either another counsel . . . or [he could] try to do it [himself]." Second, after the district court denied his request for new counsel, Bass asked the district court whether he could represent himself since he did not want to be represented by Kluzak.

Bass' comment and question significantly differ from other cases where courts have found that the defendants were simply complaining about their current attorney instead of definitively requesting to represent themselves. For example, in *Hollins*, this court noted that Hollins had made no comments about self-representation and had not requested new counsel. Instead, Hollins simply complained about his attorney. 9 Kan. App. 2d at 489. Furthermore, in *United States v. Burton*, 698 Fed. Appx. 959, 960 (10th Cir. 2017) (unpublished opinion), the Tenth Circuit Court of Appeals held that Burton did not clearly and unequivocally invoke her right to self-representation by stating that counsel had no right to speak for her because she had fired him; the court explained that Burton's statement could be interpreted as simply wanting a new attorney.

But in this case, both through his pro se motion and comment at the hearing, Bass told the district court that he intended to represent himself if the district court did not

12

appoint him new counsel. Then, after the district court denied Bass' request for new counsel, Bass followed up with his question about representing himself. Although Bass posed a question to the district court, his question explicitly told the district court that because it denied his motion, he now wanted to represent himself. Moreover, the district court implicitly acknowledged that Bass wanted to represent himself by telling Bass that if he wanted to represent himself, he must file a written motion. Indeed, by placing this written impediment to Bass' self-representation, the district court was acknowledging that Bass was requesting to represent himself. Thus, the district court's response establishes that it understood Bass' rhetorical question to be an unequivocal request to represent himself.

In short, Bass' statements and question were distinct from any dissatisfaction he had with Kluzak. Bass plainly told the district court through his statements and question that he wanted to represent himself. Thus, despite the State's argument to the contrary, Bass made a clear and unequivocal request to represent himself.

Yet, the district court did not directly answer Bass' question about self-representation. Instead, it told Bass he must file a motion in which he requested to represent himself. When we compare the preceding facts of Bass' case to the facts in *Bunyard*, there are striking similarities.

First, before the hearings where Bass and Bunyard made their unequivocal requests for self-representation, both Bass and Bunyard had filed pro se motions where they requested to represent themselves. Second, in this case and in *Bunyard*, the district courts imposed a written motion requirement on the defendants. Third, in this case and in *Bunyard*, the district courts imposed the writing requirement when the defendants had no guarantee of complying with the writing requirement. For Bunyard, he had no guarantee of filing a pro se motion because the jail did not send out mail on weekends. For Bass, he had no guarantee of filing a pro se motion because he was illiterate.

13

At this juncture, we must note that Bass was filing written pro se motions before the district court imposed the written motion requirement. Nevertheless, it is undisputed that Bass is illiterate. At his hearing to withdraw pleas, Bass explained that he would seek the help of other inmates when filing pro se motions; thus, absent receiving help from another inmate, Bass could not comply with the district court's written motion requirement. Additionally, the district court judge who denied Bass' request to appoint new counsel and imposed the written motion requirement on Bass should have known that Bass could have significant difficulties complying with such a requirement. While defending herself against Bass' motion to dismiss her as counsel, Kluzak stated that she had concerns turning over discovery because Bass "*might not be able to read*" the discovery.

Although illiteracy is not an impediment to self-representation, "[t]he inability to read and write will handicap the individual deprived of a basic education each and every day of his life." *Plyler v. Doe*, 457 U.S. 202, 222, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982). Here, by imposing a written motion requirement on Bass, the district court limited Bass' access to his constitutional right. Absent another inmate helping him file another pro se motion in which he requested to represent himself, Bass would have been unable to comply with the district court's written motion requirement because of his illiteracy. Consequently, the district court's written motion requirement was inconsistent with Bass' Sixth Amendment right to self-representation based on Bass' illiteracy.

Moreover, it was also inconsistent with Bass' Sixth Amendment right to self-representation simply because the Sixth Amendment imposes no written motion requirement. Again, in *Bunyard*, our Supreme Court explicitly held that no written motion requirement for self-representation exists: "'[A] district court cannot effectively filibuster a criminal defendant's spontaneous request for self-representation by refusing to rule on the request or by imposing requirements that the defendant reassert that request in

14

a detailed written form or in successive hearings to secure a ruling.'" 307 Kan. at 469 (quoting *State v. Bunyard*, No. 112,645, 2016 WL 1719607, at *4 (Kan. App. 2017) (unpublished opinion), (*rev'd on other grounds*). 307 Kan. at 463. Moreover, in *Jones*, our Supreme Court never mentioned a written motion requirement, explaining that "[a] defendant who clearly and unequivocally expresses a wish to proceed pro se has the right to represent himself or herself after a knowing and intelligent waiver of his or her right to counsel." 290 Kan. at 376.

As discussed in *Bunyard*, the creation of the written motion requirement can undermine a defendant's confidence that he or she will be allowed to invoke the right to self-representation. Here, especially because Bass had already filed a written motion where he requested to represent himself should the district court deny his request for new counsel, the district court's creation of the written motion requirement likely undermined Bass' belief that he would ever be allowed to represent himself.

Simply put, the district court's imposition of a written motion requirement on Bass directly contradicts our Supreme Court precedent. When Bass questioned whether he could represent himself, instead of telling Bass to file a written motion, "the law required that [Bass] be advised about the perils of proceeding pro se and then permitted to do so if he made a knowing and intelligent waiver of his right to counsel." See *Bunyard*, 307 Kan. at 477. Most importantly, the district court's failure to advise Bass of the perils of proceeding pro se when he questioned the court about representing himself resulted in structural error.

But the State contends that because Bass withdrew his pro se motion to represent himself at the hearing where he ultimately pled guilty, any of Bass' complaints about the district court violating his constitutional right to self-representation are moot. The State's argument, however, is contrary to our Supreme Court precedent in *Bunyard* and *Jones*. Both our Supreme Court's decisions in *Bunyard* and *Jones* support that once the district

15

court violates a defendant's right to self-representation, that error cannot be deemed harmless. Once more, the *Bunyard* court held: "A district judge's denial of a criminal defendant's right to forego counsel and represent himself or herself is structural error requiring reversal of the defendant's convictions." 307 Kan. 463, Syl. Additionally, the *Jones* court held:

> "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to harmless error analysis. The right is either respected or denied; its deprivation cannot be harmless. If a defendant's right to represent himself or herself is violated, the defendant is entitled to a new trial regardless of whether he or she can demonstrate prejudice." 290 Kan. 373, Syl. ¶ 6.

Our Supreme Court's holdings in *Bunyard* and *Jones* support that the moment the district court violates a defendant's right to self-representation, the district court commits structural error that is not amenable to harmless error analysis.

Notwithstanding the preceding analysis, Bass' case mirrors the *Jones* case in respect to Jones' decision to withdraw his request to represent himself. That is, both Bass and Jones had self-representation requests before the district court, the district court wrongly refused to consider those requests, but at a later hearing both Bass and Jones withdrew their self-representation requests after some discussion with an entirely different district court judge. In *Jones*, our Supreme Court determined that Jones' withdrawal of his request to represent himself at his trial did not render the district court's previous error at the preliminary hearing harmless (1) because Jones had a constitutional right to represent himself at the preliminary hearing and (2) because structural error cannot be harmless. 290 Kan. at 379-83.

Similarly, Bass had a constitutional right to represent himself upon his request to the district court. As Bass points out in his brief, he was in the middle of plea

16

negotiations when he requested to represent himself. It is well established that plea negotiations constitute a critical stage of a defendant's criminal proceedings. See *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) (holding that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process"). Moreover, as previously noted, the *Jones* court interpreted *Faretta* to mean that "the right to self-representation extend[ed] to all phases of the criminal proceeding." *Jones*, 290 Kan. at 379. Thus, Bass had a right to represent himself during plea negotiations.

Nevertheless, Kluzak engaged in plea negotiations during the time between the district court's violation of Bass' right to self-representation and the hearing on Bass' written motion for self-representation. Without Kluzak's representation, it is highly questionable whether Bass would have been able to obtain a plea agreement with the State. Regardless, because Bass was not allowed to represent himself during plea negotiations, this resulted in structural error.

Because we reverse Bass's convictions, and vacate Bass' sentences, consideration of Bass' remaining arguments are moot. See *Jones*, 290 Kan. at 383.

Convictions reversed, sentences vacated, and case remanded for further proceedings.